IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

VINCENT TU, ) No. C 11-1837 JSW (PR)
        Petitioner, )
    v. ) **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY**
ANTHONY HEDGPETH, )
        Respondent. )
_____ )

## **INTRODUCTION**

This is a habeas corpus case filed *pro se* by a state prisoner pursuant to 28 U.S.C. § 2254. The Court ordered Respondent to show cause why the writ should not be granted. Respondent filed an answer and a supporting memorandum of points and authorities and has lodged exhibits with the Court. Petitioner responded with a traverse. For the reasons set out below, the petition is DENIED.

## **BACKGROUND**

In February 2002, Petitioner entered a plea agreement pursuant to which he pleaded guilty to voluntary manslaughter, attempted second degree murder, and conspiracy to obstruct justice. He also admitted to allegations that he personally used a firearm on the counts of voluntary manslaughter and attempted second-degree murder. The trial court sentenced him to a term of 25 years and 4 months in state prison. In 2005, the California

Court of Appeal affirmed the conviction, and the California Supreme Court denied a petition for review in 2006. (Exs. 1, 13.)[1] In 2007, the United States Supreme Court granted the petition for a writ of certiorari, vacated the judgment, and remanded the matter to the California Court of Appeal for reconsideration in light of *Cunningham v. California*, 549 U.S. 270 (2007). (Ex. 14.) On remand, the California Court of Appeal again affirmed the judgment of the trial court. (Ex. 16.) In 2007, the California Supreme Court granted a petition for review, deferred briefing, and finally in 2009, dismissed the petition for review. (Exs. 19–20.) Petitioner filed another petition for a writ of certiorari in the United States Supreme Court, which was denied in 2010. Petitioner subsequently filed the instant federal petition.

Petitioner's guilty plea was based on evidence that he shot Kenneth Haramoto and Benjamin Vanderhule on Post Street in San Francisco on February 24, 2001. (*See* Ex. 11 at 2.) Haramoto was found dead on the scene, and Venderhule was found alive in the passenger seat of a vehicle at Webster and Eddy Streets. (*Id.*) The conspiracy to obstruct justice count arose from a separate incident on August 12, 1999, in which Dung Quan was shot on Webster and Geary Streets and died at a hospital thereafter. (*Id.* at 2.) Petitioner was initially indicted for conspiring to conceal the murder of Dung Quan by providing co-defendant Darius Wong with a false alibi, but under the plea agreement he was able to plea to the lesser offense of conspiracy to obstruct justice. (*Id.* at 3.)

A more detailed factual account of the crimes is neither available in the record nor necessary to resolve the claims raised here which challenge the sentence and the plea bargain. Specifically, Petitioner makes three claims that he had raised in the state courts: (1) the trial court violated his Sixth Amendment right to a jury trial by imposing the upper term for voluntary manslaughter based on Petitioner's failure to cooperate without having that fact submitted to a jury and proved beyond a reasonable doubt; (2) the trial court violated his Sixth Amendment right to a jury trial by imposing the upper term for voluntary manslaughter

---

[1] Citations to "Ex." are to the record lodged with the Court by the Attorney General.

2

based on Petitioner's prior juvenile adjudications, which are not prior convictions that can be relied upon to enhance his sentence; and (3) the trial court violated his due process right by failing to give him the benefit of his plea bargain.

## STANDARD OF REVIEW

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407–09 (2000), while the second prong applies to decisions based on factual determinations. *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412–13. A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409. When there is no reasoned opinion from the highest state court to consider the Petitioner's claims, the Court

looks to the last reasoned state court opinion. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801–06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n.2 (9th Cir. 2000).

## DISCUSSION

### I. Sixth Amendment Right to a Jury

Petitioner's first and second claims will be addressed jointly because in both claims he contends that the upper-term sentence for voluntary manslaughter violated his Sixth Amendment right to a jury. The upper-term sentence was based upon the trial court's finding the following factors: the crime involved great violence and disclosed a high degree of callousness; Petitioner engaged in violent conduct indicating a serious danger to society; Petitioner had prior juvenile adjudications; Petitioner was armed with and used a weapon at the time of committing the offense; and Petitioner did not cooperate with the District Attorney's Office. (Ex. 1 at 746–47, 764.) Petitioner's first two claims concern the Sixth Amendment's prohibition on a trial court, as opposed to a jury, making factual findings that support the imposition of an upper-term sentence. *See Cunningham v. California*, 549 U.S. 270 (2007). While there is an exception to this rule for prior convictions, Petitioner's first claim is that he does not fall within this exception because he did not have prior convictions, only prior juvenile adjudications, which he contends are not the same thing for purposes of the Sixth Amendment. His second claim is that his failure to cooperate is a finding of fact that a jury, not the trial judge, must make. (*Id.* at 29.)

In *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), the Supreme Court held "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." The Supreme Court later clarified "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Blakely v. Washington*, 542 U.S. 296, 303 (2004). This means "the middle term prescribed in California's statutes, not the upper term, is the relevant statutory maximum." *Cunningham*, 549 U.S. at 288. In *Cunningham*, the Supreme

Court, citing *Apprendi* and *Blakely*, held California's Determinate Sentencing Law violates the Sixth Amendment right to a jury trial to the extent it "authorizes the judge, not the jury, to find facts permitting an upper term sentence" beyond the middle term. *Id.* at 293.

There is no constitutional error. The exception to *Apprendi* and *Cunningham*—that a prior conviction need not be pleaded in an indictment or proved to a jury beyond a reasonable doubt—applies. *Butler v. Curry*, 528 F.3d 624, 643–44 (9th Cir. 2008) (citing *Apprendi*, 530 U.S. at 476, and *Almendarez-Torres v. United States*, 523 U.S. 224, 247 (1998)) ("[O]ur obligation to apply the *Almendarez-Torres* exception [remains] unless and until it is rejected by the Supreme Court."). Petitioner, citing *U.S. v. Tighe*, 266 F.3d 1187 (9th Cir. 2001), argues that prior juvenile adjudications do not count as prior convictions for purposes of the *Apprendi* exception. *Tighe* did hold that juvenile adjudications do not fall within the prior conviction exception. *Id.* at 1194–95. However, the Ninth Circuit has held that *Tighe*, a decision on direct review of a criminal conviction, does not to apply on federal habeas review: "[T]he [*Tighe*] opinion does not represent clearly established federal law 'as determined by the Supreme Court of the United States.'" *Boyd v. Newland*, 467 F.3d 1139, 1152 (9th Cir. 2006) (citing 28 U.S.C. § 2254(d)(1)). "[I]n the face of authority that is directly contrary to *Tighe*, and in the absence of explicit direction from the Supreme Court, we cannot hold that the California court's use of Petitioner's juvenile adjudication as a sentencing enhancement was contrary to, or involved an unreasonable application of, Supreme Court precedent." *Id.* Under *Boyd*, the state appellate court's conclusion that Petitioner's prior juvenile adjudications fell within the *Apprendi* and *Almendarez-Torres* prior conviction exception was not an objectively unreasonable application of "clearly established federal law" within the meaning of Section 2254(d)(1).

The fact that the trial court also found other aggravating factors that should have been found by a jury—including Petitioner's failure to cooperate with the investigations—does not alter this conclusion. (*See* Ex. 1 at 794.) "[U]nder California law, only one aggravating factor is necessary to set the upper term as the maximum sentence." *Butler*, 528 F.3d at 641.

Thus, in California, "if at least one of the aggravating factors on which the judge relied in sentencing [Petitioner] was established in a manner consistent with the Sixth Amendment, [Petitioner's] sentence does not violate the Constitution." *Id.* at 642–43. As it was within the trial court's discretion to sentence Petitioner to the upper term based solely upon his prior juvenile adjudications, Petitioner's sentence is constitutional irrespective of "[a]ny additional factfinding" with respect to additional aggravating circumstances, such as Petitioner's lack of cooperation. *See id.* at 643.

For the foregoing reasons, Petitioner's first two claims are without merit and must be denied.

## II.     **Breach of Plea Agreement**

Petitioner claims that the trial court's failure to give him the benefit of his plea bargain violated his due process rights. The trial court found that Petitioner did not comply with the terms of the plea agreement and imposed a sentence at the top of the agreed-upon sentencing range. (Ex. 1 at 764.) Petitioner maintains he did fulfill his end of the bargain by being cooperative and therefore should have received a sentence at the bottom of the range. (Pet. at 47–48.)

A criminal defendant has a due process right to enforce the terms of his plea agreement. *See Santobello v. New York*, 404 U.S. 257, 261–62 (1971). In determining whether a plea agreement has been broken, courts look to what was reasonably understood by the parties to be the terms of the agreement. *U.S. v. Arnett*, 628 F.2d 1162, 1164 (9th Cir. 1979). However, the construction of a state court plea agreement and the concomitant obligations flowing therefrom are matters of state contract law, and a federal habeas court should not disturb a reasonable state court's interpretation of those issues. *Ricketts v. Anderson*, 483 U.S. 1, 5 n.3 (1987).

The state appellate court summarized the relevant background as follows:

> The Negotiated Agreement provided that (1) appellant would plead guilty to charges "deemed appropriate" by the court and the district attorney; (2) the plea contemplated a prison term of between 20-1/3 and 25-1/3 years; (3) appellant would plead to "violent felony" offenses not limited to voluntary manslaughter;

(4) appellant would "testify truthfully against all the defendants in People v. Darius Wong, et al." (case in which appellant, a codefendant, was charged with conspiracy to obstruct justice); (5) appellant would "cooperate fully in the investigation and prosecution of any cases arising out of the proffer he provided to the San Francisco Police Department" and would truthfully answer relevant questions posed by any prosecutor or other law enforcement officer; (6) sentence would not be imposed until conclusion of the Darius Wong jury trials; and (7) if there was a dispute as to whether appellant testified truthfully and the trial court concluded he made a material false statement, the People had the option of voiding the agreement, reinstating original charges and filing appropriate additional charges, including perjury.

At the plea proceeding defense counsel indicated "the agreement will be pursuant to a written plea agreement that will be supplemented by formal allocutions on the record."[2] He went on to state the specific terms to which appellant would plead and the items that would be stricken. The prosecutor indicated that the sentencing "spread" would be from 20-1/3 to 25-1/3 years, "subject to the discretion of the Court after reviewing the nature and extent of the defendant's compliance with the terms of a plea agreement and its evaluation of his testimony." Appellant indicated that he heard and understood everything that was said, and had sufficient time to speak with his attorney prior to the hearing. The court went over the various waivers and asked appellant if he understood that his sentence would be between 20-1/3 and 25-1/3 years. Appellant indicated he did.

Six months later appellant substituted new counsel, who sought a continuance of the sentencing hearing to prepare a motion to withdraw the plea. The prosecutor pointed out that under the plea agreement, appellant had a duty to cooperate in testimony in the Darius Wong case and that in determining "what the spread on the sentence should be," the court was to take into account whether or not appellant had been truthful in the matter. It was the prosecutor's understanding that the plea agreement contemplated between 20-1/3 years and 25-1/3 years depending on "whether or not he's been truthful." With the effort to withdraw, appellant "would not be agreeable to testifying in the other matter" and thus presumably he would get the higher sentence. The court went on to express its discomfort with plea agreements which tie the sentence to whether or not defendant tells the truth.[3] It was the court's understanding that this was not such an agreement. Rather, the agreement was that defendant be cooperative, and the court would assess cooperation based on the totality of the circumstances.

. . . .

---

[2] The formal allocutions consisted of the specific pleas and admissions, recitation of constitutional rights, advisements, maximum terms, possibility of parole and consequences regarding revocation and the fact that the plea was offered as a result of discussions with the court and district attorney's office as embodied in the written plea agreement executed in open court.

[3] The court related a past instance where a public defender cross-examined a witness who was the beneficiary of this type of agreement. When asked his understanding of what it meant to perjure oneself, the witness said, "[S]aying something the district attorney doesn't want me to say." Needless to say, the court did not want to create that type of environment.

> At the subsequent hearing, defense counsel stated that appellant was unable to fulfill the cooperation condition because the prosecution decided not to use him as a witness after he moved to withdraw his plea. The prosecutor countered that once appellant filed a declaration saying he was innocent, his credibility as a witness was "spoiled" because he was basically saying he was railroaded. The court imposed the aggravated term based on aggravating factors and the absence of mitigating factors. The court held a supplemental hearing to augment the reasons for imposing the upper term. Defense counsel argued that the traditional "Rules of Court" analysis should not apply—"It's either he cooperated, he gets the low term or he did not cooperate and he gets the high term." The court found that appellant "was uncooperative with the District Attorney's Office with respect to the investigations that he committed himself to cooperate with."

(Ex. 11 at 6–8) (footnotes renumbered from original). After finding that Petitioner failed to cooperate with investigators, the trial court imposed a sentence of 25 years and 4 months, at the top of the agreed-upon range of his sentence. (Ex. 1 at 764.)

Petitioner argues that he did cooperate with the prosecution in accordance with the agreement, and that the trial court was wrong in finding that his effort to withdraw his plea constituted a lack of cooperation. He contends that the prosecutor's position on Petitioner's lack of usefulness as a witness in the Darius Wong case was contrived and in any event there had been no need to "testify truthfully" because the Darius Wong case had settled. (Pet. at 41–45.) The state appellate court rejected Petitioner's argument as follows:

> As the People point out, the prosecution agreed to the negotiated disposition on the premise that appellant's plea to voluntary manslaughter was based on his willingness to tell the truth, which would boost his credibility in the Darius Wong case. Once he took the position that he was railroaded into signing the agreement, his credibility was diminished. Further, defense counsel admitted that "[a]s a result of [the effort to withdraw the plea], [appellant] was unable to complete—under my advice, to complete that agreement. . . . [The prosecutor] indicated to me—he asked me . . . more than once is Mr. Tu going to continue to cooperate I guess would be the word and I said we have to see how the motion goes, obviously after the motion we will talk more." According to the prosecutor, prior to the motion to withdraw, appellant had proffered a video statement. But the plea agreement included the prosecutor's ability to go back to appellant for further information, polygraph him if necessary, and his ongoing obligation to testify to any further matter that developed. Apparently once the motion to withdraw was underway, appellant's attorney advised the prosecutor that appellant would not submit to any further interviews and the district attorney's office should not speak with appellant for any purpose. And even though the Darius Wong case settled, the prosecutor felt that appellant's behavior prejudiced the outcome and forced the People to take a lesser sentence. Defense counsel disagreed with the People's evaluation of the harm stemming from appellant's declaration in the motion to withdraw. However,

> there was substantial evidence to support the trial court's conclusion that appellant did not cooperate. The court was within its discretion and within the terms of the agreement to rely on this finding to impose the upper term.
>
> . . . .
>
> To reiterate: The trial court correctly looked at the totality of circumstances, including failure to testify. The agreement set forth conditions of cooperation and provision of testimony. It set forth a sentencing range, and inherent in that provision was the court's discretion to select the appropriate term. The agreement provided that in the event the court determined appellant did not testify truthfully, the People could reinstate the original charges. However, the agreement did not purport to excuse other failures of performance, nor did it purport to hamstring the court's selection of a sentence within the agreed upon range. Specifically, nothing in the agreement limited the court's considerations of factors in choosing the sentence.

(Ex. 11 at 9–11.)

The state trial and appellate courts' determination that Petitioner failed to cooperate was objectively reasonable. Defense counsel admitted to the trial court that Petitioner was unable to complete the agreement because of his attempt to withdraw his plea. (*Id.* at 738.) Although the parties disagreed about the extent of the harm that Petitioner's motion to withdraw his plea had on the Darius Wong case (*see, e.g.*, *id.* at 742.), it was reasonable for the state court to conclude that Petitioner's actions prejudiced the outcome of the Wong case and forced the prosecution to settle for a lesser sentence. Further, the prosecutor indicated that defense counsel had advised him that Petitioner would not submit to any further interviews and that the prosecutor should not speak with Petitioner for any purpose. (*Id.* at 741.) This would indicate Petitioner's refusal to provide the prosecutor with additional information about the Darius Wong case or a polygraph if necessary. (*See id.* at 344.) Under these circumstances, it was objectively reasonable for the state court to find that Petitioner was not cooperative with the prosecution.

Petitioner further argues that even if he did fail to cooperate, the trial still court should not have imposed the upper-term sentence. He believes that the plea agreement restricted what the trial court could do in the event he did not cooperate, namely it could only reinstate the original charges, not impose the upper-term sentence. Petitioner's argument rests on a convoluted interpretation of the plea agreement as consisting of two agreements, one written

9

1  and one oral. He contends that the written agreement required Petitioner's cooperation, and
2  only authorized the trial court to reinstate the original charges if Petitioner did not cooperate.
3  The oral agreement, according to petitioner, authorized the upper-term sentence, but only if
4  Petitioner's did not testify truthfully at Quan's trial. (*Id.* at 36–40.) Petitioner argues that his
5  failure to cooperate constituted a breach of the written agreement, not the oral one, and
6  therefore the trial court was limited to reinstating the original charges, not imposing an
7  upper-term sentence.

8        The state appellate court rejected Petitioner's argument as follows:

> There was but one agreement, . . . which encompassed a reduction of charges as well as a confined sentencing range. Appellant's convoluted argument about one agreement for reduction of charges and one for reduction of sentence is beyond a strained reading of the record. The written agreement stated appellant would plead guilty to violent felony offenses, including voluntary manslaughter, and that the sentence would be between 20-1/3 and 25-1/3 years. The "allocutions" on the record spelled out the particular offenses pleaded to and stricken. One agreement, unfolding according to plan.
>
> Appellant also suggests that the court changed the terms of the plea agreement, from a requirement of truth-telling to one of cooperation. Again, this is not the case. The court's assessment of appellant's cooperation encompassed the totality of the circumstances, including whether it appeared that he was telling the truth. The agreement called on appellant to testify truthfully and to cooperate in the investigation and prosecution of cases arising out of his proffer to the police. The court did not change terms.

18  (Ex. 11 at 9.)

19        Petitioner cannot demonstrate the state court's finding that there was only one
20  agreement was unreasonable. As Petitioner's trial counsel noted, the agreement between the
21  parties was pursuant to a written plea agreement, which was to be supplemented by, rather
22  than an addition to, formal allocutions on the record. (Ex. 1 at 351.) These formal
23  allocutions, which Petitioner refers to as the alleged "oral agreement," merely detailed the
24  specific terms of the written agreement and amended the information therein. Thus, the
25  newly-raised discretion of the court to impose the aggravated term, "after reviewing the
26  nature and extent of [Petitioner's] compliance with the terms of [the] plea agreement and its
27  evaluation of his testimony," was to be incorporated into the single plea agreement. (*See id.*

at 352–53.) Further, the trial court asked Petitioner if he understood and accepted what had been discussed on the record and in the written agreement, and Petitioner indicated that he did. (*Id.* at 360–62.) Once the trial court made the requisite findings and accepted Petitioner's plea, therefore, the amended agreement became "fixed" and enforceable. *See Brown v. Poole*, 337 F.3d 1155, 1159 (9th Cir. 2003). Under these circumstances, the state court's finding that the plea agreement authorized the trial court to impose an upper-term sentence based upon Petitioner's lack of cooperation was objectively reasonable.

The state court's rejection of Petitioner's claim that his right to due process was violated by a preach of his plea agreement was an objectively reasonable application of federal law. Accordingly, Petitioner is not entitled to relief on this claim.

## CONCLUSION

For the foregoing reasons, the petition for writ of habeas corpus is DENIED.

A certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c). This is not a case in which "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Clerk shall enter judgment in favor of Respondent and close the file.

IT IS SO ORDERED.

DATED: March 19, 2012

JEFFREY S. WHITE
United States District Judge

|   |   |   |
|---|---|---|
| 1 | UNITED STATES DISTRICT COURT | |
| 2 | FOR THE | |
| 3 | NORTHERN DISTRICT OF CALIFORNIA | |

VINCENT TU,

    Plaintiff,

  v.

ANTHONY HEDGPETH et al,

    Defendant.

Case Number: CV11-01837 JSW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on March 19, 2012, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Vincent Tu
V26685
P.O. Box 1020
Soledad, CA 93960

Dated: March 19, 2012

*Jennifer Ottolini*

Richard W. Wieking, Clerk
By: Jennifer Ottolini, Deputy Clerk